Battle, J.
 

 The bill is filed for the purpose of having a marriage contract, alleged to have been executed by the plaintiffs upon a misapprehension and mistake of its terms, corrected, and a settlement made in conformity with the real intention of the parties. There are some allegations of fraud, and undue influence exercised over the feme plaintiff, which are not sustained by any competent testimony, and which we shall, therefore, dismiss from our consideration. Indeed, it is hardly necessary for us to notice the extrinsic testimony, in relation to the execution of the contract at all, except merely to say, that it tends to support the inference, which the law draws from the terms of the contract itself,
 
 *158
 
 that they
 
 arese
 
 a fraud upon the rights of the feme plain-tiif, and must be relieved against in this Court.
 

 The property, which the parties intended to settle by the instrument which they executed, belonged, before the marriage, exclusively to the woman. By the contract, she is made to give up her right to dispose of it, by deed, or otherwise, not only during coverture, but even after the death of the husband,, in the event of her surviving him. More than 'this, she renounces the privilege of receiving and disposing of the rents and profits of the estate during the coverture, the instrument providing that they shall be “ ordered, disposed, and employed by the trustees for such uses, interests and purposes, and in such manner and form as the said trustees may think proper.” As a final disposition of the estate, it is after a life-estate reserved to her, limited^
 
 “
 
 in default of her issue, to return to her present heirs before marriage.” The provision in favor of her issue, could hardly have been expected to amount to much, when it was remembered that she had arrived at the age, at which women, ordinarily, cease to have offspring. The case, then, presents this singular result, that a woman of the mature age of forty-six, having a comfortable estate in land and slaves is, for the privilege of getting married, induced by her brothers, to enter into a contract, by which her intended husband is deprived, not only of any benefit to be derived from her property during coverture, but of eveiy possibility of getting it, or any part of it, after her death, should he be the survivor ; she submits to have her fee simple estate in the lands, and her absolute estate in the slaves cut down to a life-estate ; her power of disposing of the property is taken away, both during and after coverture, and even the rents and profits are to be expended by the trustees as they -may think proper ; and it is substantially limited after her death, to persons, who are her relations indeed, but entire strangers to the consideration upon which the contract was founded.
 

 Such a contract, unless proved by the clearest testimony to have been fully understood and freely assented to by the in
 
 *159
 
 tended wife, must be declared to be fraudulent as to her. In laying down this proposition, we are fully sustained by the decision of this Court in the case of
 
 Scott
 
 v.
 
 Duncan,
 
 1 Dev. Eq. Rep. 403. There, a settlement and not a mere contract for a settlement was made, in which the estates were settled, to the use of the husband and wife for their joint lives, but not subject to his debts or disposal; and if she survived, to her for life; and upon her death, without issue living, over to her two sisters and their children. RuffiN, J., who delivered the opinion of the Court, made some remarks, so applb cable to the case before us, that we cannot do better than quote his language:
 

 “ A most important circumstance presents itself to our consideration upon first opening this case. The deed is an absolute and irrevocable disposition of the property, although made by a person who was not likely to have issue. That an absolute settlement should be made on the children of the marriage, would not surprise us. We should expect that the husband would require it, and not leave it to the wife, without his consent, or that of the trustee, to appoint it away to strangers, or to the issue of another marriage. But here, issue, though mentioned in the deed, could hardly have been anticipated by a lady of fifty years of age. In such a case, the want of a power of revocation and reappointment astonishes. It is against the proneness of the human heart to retain the dominion over property. But if we are surprised at finding no such power reserved to the wife during the cover-ture, how much more must we be struck, when we come to see, that although the deed contemplates her surviving the husband, yet, in that event, also, her hands are perfectly tied. Her estate does not become her own again, though her necessities may require a sale. She is not even allowed to devise 'it among her own relations. This deed fixes, by irreversible doom, the course of the lady’s estate, against her own necessary use of it, and power of reasonable disposition after dis-coverture ; and this, not as against her own children, but as to collaterals, who are strangers to the consideration upon
 
 *160
 
 which it was made. It is impossible for a court of justice to say that any extrinsic evidence — any thing out of the deed itself, could entirely remove the suspicion of fraud, or of mistake, arising from gross ignorance in the parties, which these strange omissions create. Nothing but imposition, or taking advantage of a fatuous confidence, could bring to the point of actual execution, such an instrument. Upon the face of the deed, it is fraudulent.”
 

 If there were any words of conveyance, in the instrument now before us, by which the property of the wife was conveyed to the trustees, the case would be almost identical with that of
 
 Scott
 
 v.
 
 Duncan,
 
 in the facts, as it is entirely so in the principle; for it is evident, that the principle must be the same, so far as the instrument may be affected by fraud or mistake, whether it be an actual settlement or a mere contract for one. In either case, the court of equity has jurisdiction to reform it, by directing the execution of a deed of settlemeutin accordance with the proved or admitted intention of the parties. It may not be improper to notice here, that the bill treats the present instrument as a mere contract for a settlement, and not an actual settlement, as seemed to be supposed by the counsel for the defendant, in his argu-taent before us.
 

 We have already remarked, that the extrinsic evidence so far from rebutting the legal inference of fraud or mistake, arising from the instrument itself, tends to confirm it. A part of that evidence is, that the instrument, in question, was read over to the intended husband and wife, and was executed by them just before the marriage ceremony was performed.— Upon that circumstance, an argument is founded, that if the parties to the marriage, knew the contents of the instrument, and mistook its legal effect, they cannot have relief; as there is a well established distinction between a mistake as to a matter of fact, and one as to a matter of law. The case of
 
 Scott v. Duncan,
 
 to which we have already alluded, affords us the following satisfactory reply to a similar objection. But it is, then a reliance that the deed was read over to her;
 
 *161
 
 and it is argued that a mistake of its legal operation, could not be averred. It is clear, that where the parties are perfectly aware of the actual contents of the deed and each, acting, on his own judgment, or that of his counsel, omits to insert a clause, for fear it may affect the deed in law, they cannot be helped. But here, the question is one of imposition and abuse of confidence. The very enquiry is, whether she did, in fact, know and understand what wras in the deed and what was not. It was read to her, it is true; but what a time to produce a complicated marriage settlement to an uninstructed female, dressed for her marriage! "Was it read to her in the hope that she would or would not understand it?, To whom could she apply for advice, but to the veryrperson who had contrived the imposition on her. I wonder that she had not signed and sealed without a question.” These remarks are almost as pertinent and applicable to the facts of case before ns, as to that wherein they were made. Our conclusion then is, that the feme plaintiff is clearly entitled to relief against the contract, which she was induced to execute in contemplation of her marriage. We are equally clear, that the husband is also entitled to have the settlement, which must he decreed, so arranged as to leave him the chance of having the slaves and other personal property, appointed'for his use, by a will, or an instrument in the nature of a will, executed by bis wife, during coverture. The husband was probably as much ignorant of the contents of the instrument, which be executed, as was his wife. But even supposing that he knew its contents, he was called upon to execute it under such circumstances as to make it inoperative against him, except so far as we can infer that he freely assented to it. A settlement by which the intended wife’s property was to be so settled to lier sole and separate use, as to keep it free from the intended husband’s debts and incumbrances during the coverture, was certainly in the contemplation of the parties, and to that intent, he is bound by his contract, but we cannot believe that he freely excluded himself from any benefit, or possibility of benefit, from her property, not only during
 
 *162
 
 the coverture, but even after it, although lie might be the survivor; see
 
 Taylor
 
 v.
 
 Rickman,
 
 Busbee’s Eq. 278.
 

 The proper decree, if drawn in accordance with the principle of our decision, will be, that the property, real and personal, mentioned in the marriage contract, referred to in the pleadings, shall be conveyed to some suitable person, as trustee, in fee as to the land, and absolutely as to the slaves and other chattels, in trust, for the sole and separate use of the wife during coverture, and if she should survive her husband, then in trust for her in fee of the land, and absolutely of the personalty, but if she should die without issue, during cover-ture, then to her heirs-at-law and next of kin exclusive of her husband, with a power of revocation and appointment by a a will, or by a paper-writing, properly attested by two credible witnesses, in the nature of a will, executed during cover-ture, in case she died during the life-time of her husband. Such a settlement will give to the wife as much control over her estate, as she can be allowed to exercise, without being liable to the improper influence of her husband; and will restore to her the complete ownership, in the event of her surviving him. It will give effect to the disposition, contained in the contract of settlement, in favor of those whom she therein calls
 
 “
 
 her present heirs before marriage,” in case of her dying without issue during the coverture, unless she chooses to dispose of it to her husband or to some other person, by the exercise of the power of revocation and appointment, reserved to her, to be exercised during coverture, by means of a will or a paper-writing in the nature of a will. The plaintiffs are entitled to their costs against the defendants, Daniel and ’William Robinson, and must pay costs to the defendant, Corbett. The other defendants must pay their own costs.
 

 Bek Cueiam, Decree accordingly.